**Algie Legrand JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 38016.**

Court of Criminal Appeals of Texas.

March 31, 1965.

Rehearing Denied May 12, 1965.

Ronald R. Waldie, Dallas, for appellant.

Henry Wade, Dist. Atty., Ross Teter, John Stauffer and W. John Allison, Jr., Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Judge.

The offense is drunk driving; the punishment, 30 days in jail and a fine of $100.

The undisputed evidence shows that appellant drove a Chevrolet automobile into the rear of a Ford automobile that was stopped at a street intersection in Irving, Dallas County, about 10:30 P.M. He was the sole occupant of the Chevrolet in which were a six pack, several empty cans and one partially empty can of beer.

Appellant was thrown against the steering wheel and received a cut underneath his chin and other injuries.

At his request he was taken to Methodist Hospital where his injuries were treated and then to Parkland Hospital where a blood specimen was drawn at 3:05 A.M.

Police Officer Andrews, who investigated the collision and made the arrest, testified that he noted a strong smell of alcohol on appellant's breath when he was checking him for injuries at the scene; that his eyes were very bloodshot and his speech barely audible, and that from his observation of him and his experience in observing intoxicated persons he formed the opinion that appellant was intoxicated.

William D. Yates, who witnessed the collision and was the first to reach appellant, testified that he was gasping for breath and he could tell that he had been drinking something, but how much or what he did not know and he formed no opinion as to whether he was intoxicated.

Testifying in his own behalf, appellant admitted having consumed two beers at the place where he purchased two six packs and that he drank one can and opened another out of one of the six packs. He denied that he was intoxicated.

All of the grounds upon which reversal is sought relate in some way to the examination of Dr. Morton F. Mason and his testimony to the effect that an analysis of the blood sample taken from appellant at 3:05 A.M. showed an alcohol content of 0.134 percent which he testified would have been at least 0.03 percent higher at 10:30 P.M., assuming that no alcohol had been consumed since that time; and Dr. Mason's testimony to the effect that all persons having 0.134 percent of alcohol in their blood would be under the influence of alcohol and would not have the normal use of their mental and physical faculties; and his further testimony to the effect that in his opinion any individual who attains a blood-alcohol concentration as high as 0.10 percent will become under the influence of alcohol.

 Appellant first complains that Dr. Mason should not have been allowed to testify to a variance in a blood specimen between 10:30 P.M. and 3:05 A.M., the contention being that he was not shown to be qualified as a medical expert.

While Dr. Mason is not a physician or a medical doctor, it would be difficult to match his qualifications shown by this record to testify as to all phases of scientific tests relating to concentration of alcohol in the blood and the results of such tests. Dr. Mason's qualifications include the following:

Doctor of Philosophy degree in Chemistry

Bachelor of Science degree

Associated with Vanderbilt School of Medicine for 10 years

Since 1944, Professor in a Dallas School of Medicine, teaching physicians as well as medical students in the field of toxicology and the study of alcohol and its effects upon the human body

Director of the Dallas City-County Criminal Investigation Laboratory

Made numerous tests to confirm evidence already present in scientific literature concerning the percentage of blood alcohol concentration at which a person will become under the influence of alcohol.

Had testified for the state in drunk driving cases around a thousand times.

We note further that Dr. Mason at no time attempted to testify as to the exact variance in the alcohol content, but only that it would have been *at least* 0.03 or 0.04 percent greater at 10:30 P.M., giving the individual the benefit of having the slowest oxidation rate that he ever heard of.

 During the lengthy cross-examination of Dr. Mason, in which there were various references to a text book and certain tests made in 1938, in an effort to show that 0.20 rather than 0.10 was the crucial point at which mild to moderate intoxication occurs, appellant complains that at one time the court remarked "Overrule you" and at another, stated "Can we get down to the fine points * * * instead of so much of this rambling?" and "we are going to be here three days on this," and that he interrupted counsel and said "Go ahead, but cut

it down as short as you can. I hope the jury's getting some benefit from this."

We are unable to agree that the court's remarks were beneficial to the state or an injury to appellant.

Assuming that the court's remarks were not a proper method of expediting the cross-examination (which covers some 27 pages of the statement of facts) they were not such comment as were reasonably calculated to prejudice appellant's rights and do not call for reversal. See Phelper v. State, No. 37,771; Adams v. State, 165 Tex.Cr.R. 523, 309 S.W.2d 245.

■ We find no merit in the contention that the trial court erred in sustaining objection to the question propounded to Dr. Mason on cross-examination as to how many occasions he had testified in a drunk driving case where the test read 0.134 percent. It was of no significance how many, if any, of the tests in such cases read precisely 0.134 percent.

The remaining claim of error relates to argument. We have considered the argument and objection thereto and find no reversible error.

The judgment is affirmed.