STATE of South Dakota, Plaintiff
and Respondent,

v.

Angelo PETRUZELLO, Defendant
and Appellant.

No. 11782.

Supreme Court of South Dakota.

Feb. 17, 1977.

William J. Janklow, Atty. Gen., John P. Guhin, Asst. Atty. Gen., Pierre, for plaintiff and respondent.

Steve Jorgensen, Willy, Pruitt, Matthews & Jorgensen, Sioux Falls, for defendant and appellant.

WOLLMAN, Justice.

Defendant was found guilty by a jury on two counts of distributing a controlled substance. On appeal he contends that the trial court erred (1) by not granting defendant a preliminary hearing on the charge contained in the amended information, (2) by commenting in the presence of the jury on the effectiveness of the cross examination of one of the state's witnesses, and (3) by permitting the state to question defendant about his prior use of drugs. We affirm.

Defendant was originally charged with two counts of distributing marijuana. He was bound over to circuit court for trial after a preliminary hearing. Defendant was to be arraigned on the morning of trial. At that time the state was given permission to file an amended information charging defendant with having distributed tetrahydrocannabinol (THC). Defendant's objection to the filing of the amended information and his request for a preliminary hearing on the two counts contained therein were denied. Defendant exercised his statutory right to a twenty-four hour delay

before pleading to the amended information. SDCL 23–35–14.

SDCL 39–17–88 provides:

"Except as authorized by this chapter, it shall be unlawful for any person to manufacture, distribute, or dispense a substance controlled under this chapter, or to possess with intent to manufacture, distribute, or dispense, a substance controlled under this chapter."

SDCL 39–17–53 provides:

"All controlled drugs and substances listed in §§ 39–17–54 to 39–17–68, inclusive, are hereby controlled. The schedules set forth in said sections include the controlled drugs and substances listed or to be listed, by whatever official name, common or usual name, or trade name designated."

SDCL 39–17–57 provides in part:

"Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers, and salts of isomers, is included in Schedule I, unless specifically excepted, whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation:

\* \* \* \* \* \*

(7) Marihuana

\* \* \* \* \* \*

(12) Tetrahydrocannabinol
\* \* \*"

SDCL 39–17–44(10) provides:

" 'Marihuana' means all parts of any plant of the genus cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin; but shall not include fiber produced from the mature stalks of such plant, or oil or cake made from the seeds of such plant."

SDCL 23–20–2 provides:

"No information shall be filed against any person for any offense until such person shall have had a preliminary examination thereof as provided by law before a magistrate, unless such person shall waive such right."

■ Defendant relies upon the case of *State v. Anderson,* 60 S.D. 187, 244 N.W. 119, in support of his contention that he was entitled to a preliminary hearing on the charges contained in the amended information. We do not read the *Anderson* case as requiring that result, however, for in that case defendant was originally charged with grand larceny, was bound over on a charge of receiving stolen property, and was then informed against in circuit court on a charge of grand larceny. The situation in the instant case is more akin to those cases in which it was held that the amended information did not set forth a new charge. *State v. Martin,* 85 S.D. 587, 187 N.W.2d 576; *Fanning v. State,* 85 S.D. 246, 180 N.W.2d 853; *State v. Brown,* 84 S.D. 201, 169 N.W.2d 239. As indicated above, marijuana and tetrahydrocannabinol are both hallucinogenic substances, the distribution of which, with narrowly drawn statutory exceptions, is unlawful. The state's expert witness testified that all marijuana contains THC. See also *State v. Murphy,* S.D., 234 N.W.2d 54; *Cassady v. Wheeler,* Iowa, 224 N.W.2d 649. Although apparently there is a synthetic form of THC, we do not understand defendant to contend that the state charged him with the distribution of such form of THC or that he was misled to believe that he was being so charged.[1] We conclude, then, that the amended information charged no new offense and that the trial court did not err in allowing it to be filed. Whether defendant would have been entitled to a continuance to prepare to defend on the amended charge in addition to

1. Ch. 158, § 42–12, Laws of 1976, effective April 1, 1977, would amend SDCL 39–17–57(12) to read: "Tetrahydrocannabinol other than that which occurs in marijuana in its natural and unaltered state". As amended, subsection (12) is apparently intended to include only the synthetic form of THC.

the statutory delay that he availed himself of, we need not decide.[2]

■ Defendant's next contention concerns a remark made by the trial court during the cross-examination of one of the state's expert witnesses. After defense counsel had asked the witness a series of questions about the accuracy of the test for THC, the deputy state's attorney interjected:

"MR. HOSMER: Your Honor, I'm going to object to this; I don't know where its leading us it doesn't seem to be proving anything that's relevant to this case as far as I can see.

THE COURT: The last thing I want to do is restrict his stock (sic) examination, but I'm quite sure the jury gets about as much out of this as I am at this point, which is very little.

MR. PATTON: I understand it's late in the day, but, Dr. Mathison is willing to testify that this substance is, in fact, THC, and if a process will yield something other than an accurate result because of particular adjustments of calibration, or whatever, I would have to at least inquire on them.

THE COURT: Well, you asked him and he said no. Okay, go on."

This gratuitous comment by the trial court was, of course, highly improper and constituted a serious lapse in judicial deportment. On the other hand, defense counsel took no exception to the trial court's remark, when even the gentlest remonstrance should have been sufficient to awaken the trial court to the realization of its error. In the absence of any such objection or any request for a curative instruction, and in view of the fact that counsel was promptly directed to continue his cross-examination, we conclude that the trial court's remark, however ill advised and inappropriate, did not constitute reversible error. *State v. Ross,* 47 S.D. 188, 197 N.W. 234; *State v. Rief,* 53 S.D. 438, 221 N.W. 53; *State v. Shea,* 58 S.D. 210, 235 N.W. 648; *Jones v. State,* Tex.Cr.App., 389 S.W.2d 478;

*DeLeon v. State,* Tex.Cr.App., 500 S.W.2d 862; Annot. 62 A.L.R.2d 166.

Defendant offered the defense of alibi and took the stand in his own behalf. After testifying about his place of birth, schooling, and pre-trial occupation as an elementary school teacher in the Tabor, South Dakota, school system, defendant testified in response to a question from his counsel concerning a course on drug abuse, that:

"A Okay. I gathered all, from the library, gathered information on drugs, drug awareness, what they look like, their effect physically on the body, on the mind, on the pocketbook, and how much it costs. And we got into the aspects of why you would do drugs to be accepted by your peers and made them come to their conclusions of that, you know, if they are going to do certain drugs, it should be something that is well thought out and they should know all the pros and cons about it."

Defendant then went on to testify in support of his alibi defense. On cross-examination the state's attorney asked defendant, "Now, is it your testimony that you've got some special knowledge about drugs that you were teaching a drug-abuse class?" to which defendant answered:

"Well, you can't help but have a knowledge of drugs when you were born and raised in New York. And I have an older brother that had been on Methadone program for years. That's why I left there. I have a very good knowledge of that."

Over defendant's objection, the state's attorney was permitted to ask defendant, "Have you ever used drugs?" to which defendant answered, "I tried marijuana." The trial court then sustained defendant's objection to the state's follow-up question concerning the number of times that defendant had tried marijuana.

Defendant contends that it was prejudicial error for the court to permit the state

2. Although we have discussed defendant's contention on its merits, we note that he did not move to set aside the amended information in accordance with SDCL 23-36-1(5).

to question him about prior drug use, citing the rule that evidence of the commission of other offenses similar to the one charged is not generally admissible in the prosecution of narcotics violations. See 25 Am.Jur.2d, Drugs, Narcotics and Poisons, § 46. This is in accord with the general rule that evidence of other offenses is inadmissible to show commission of the crime charged. See, e. g., *State v. Pickering,* S.D., 217 N.W.2d 877; *State v. McCreary,* 82 S.D. 111, 142 N.W.2d 240; *State v. Norman,* 72 S.D. 168, 31 N.W.2d 258; *State v. Hanks,* 55 S.D. 63, 224 N.W. 946; *State v. Mitchell,* 61 S.D. 147, 246 N.W. 635, and *State v. Runyan,* 49 S.D. 406, 207 N.W. 482.

The state argues, however, that defendant had placed his character in issue by "attempting to paint himself as a sturdy and informed crusader against drug misuse and certainly not one who would engage in the sale of drugs." We conclude that the state's analysis of defendant's testimony is, if somewhat hyperbolic, essentially correct. The only possible relevance of defendant's testimony on direct examination was to lead the jury to believe that because defendant was one who had lectured on the dangers of drugs he perforce would not have committed the offenses charged and hence must have been at the places alleged in his alibi defense. Certainly that portion of defendant's answer on cross-examination that indicated that he had left New York to get away from drugs was not responsive to the question and must have been intended to reinforce the implication in defendant's testimony on direct examination that he knew of the dangers of drug use and therefore would not distribute drugs. Thus the trial court did not err in permitting the state to question defendant about his own use of drugs in order to rebut the image that he had attempted to establish that he was not one who would commit the type of offense charged, for as we recognized in *State v. McCreary,* supra, once a defendant has given evidence of his good character,

the state may introduce evidence of his bad character. See 29 Am.Jur.2d, Evidence, § 340; McCormick on Evidence, §§ 190–191 (2d ed. 1972).

The Kansas Supreme Court recently said with respect to testimony of a similar nature:

"We think a fair analysis of the testimony of the defendant on direct examination discloses the evidence went beyond permissible bounds and opened the door for the state to cross-examine the defendant as to his prior conviction for burglary and larceny. The defendant's testimony did more than let the jury know who he was so it could properly fit him into the pattern of events. It characterized him as devoutly religious, energetic, cultured, sophisticated, thoughtful and generous. As circumstantial evidence, those character traits are clearly relevant in regard to the probability defendant would commit an act of armed robbery. While it may be conceded that some such evidence was properly related to the alibi defense, we believe defendant's testimony clearly reflects evidence of good character . . . ." *State v. Bowers,* 218 Kan. 736, 740, 545 P.2d 303, 306.

We believe that the same rationale applies to defendant's testimony in the instant case. See also *Jackson v. State,* Alaska, 509 P.2d 278; *Commonwealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844; *State v. Allen,* S.C., 224 S.E.2d 881; *State v. Frayer,* 17 Utah 2d 288, 409 P.2d 968.[3]

The judgment of conviction is affirmed.

All the Justices concur.

---

3. Defendant has called our attention to the recent case of *State v. Ivory,* Iowa, 247 N.W.2d 198. That case is inapposite, however, for there the defendant did not testify in a manner that tended to place her character in issue.